**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | | |
|---|---|---|
| L.M., a minor, by his next friends and parents, Jane Roe # 1 and John Doe #1, et al., | ) ) ) | |
| Plaintiffs, | ) ) | Case No.: 1:23-cv-01574-MSN-IDD |
| v. | ) ) | |
| JONATHAN GRAHAM, et al., | ) ) | |
| Defendants. | ) ) | |

**JONATHAN GRAHAM'S REPLY TO PLAINTIFFS' RESPONSE AND MEMORANDUM
IN OPPOSITION TO DEFENDANT GRAHAM'S MOTION TO DISMISS AND
PLAINTIFF'S [sic] MOTION FOR DISCOVERY PURSUANT TO RULE 56(d)**

Defendant, Jonathan Graham ("Graham"), by and through counsel, submits this Brief in Reply to Plaintiffs' Response and Memorandum in Opposition to Graham's Motion to Dismiss and Plaintiff's [sic] Motion for Discovery Pursuant to Rule 56(d). In support of his Reply Brief, Graham states as follows:

**I.    PROCEDURAL HISTORY**

A.D. reported that his schoolmates, L.M. (12 years-old), M.G. (12 years-old), and E.R. (13 years-old), had sexually assaulted an autistic schoolmate, Y.A. (11-years-old). A.D.'s report was relayed to Y.A.'s family. Y.A.'s family reported A.D.'s accusation to the school via email. The school reported the accusation to the Town of Leesburg Police Department. The Police Department assigned Graham, a detective with the Department, to investigate the matter. During Graham's investigation, two (2) interviews of A.D. were conducted, as was a video recorded interview of Y.A. Both A.D.'s and Y.A.'s interviews corroborate that Plaintiffs sexually assaulted Y.A. The interviews were presented to Loudoun County Juvenile Intake. Juvenile Intake then made probable cause determinations that each Plaintiff committed aggravated sexual battery in violation of

Virginia Code § 18.2-67.3. As such, Juvenile Intake filed Juvenile Petitions (or warrants), which led to Plaintiffs' arrest and detention at the Loudoun County Juvenile Detention Facility. Ultimately, the Assistant Commonwealth Attorney ("ACA") *nolle prossed* the charges against Plaintiffs.

On December 8, 2023, Plaintiffs filed a complaint against Graham (the "Complaint"). In the Complaint, Plaintiffs allege that Graham is liable for both Fourth Amendment Malicious Prosecution under 42 U.S.C. § 1983 ("Section 1983") and Malicious Prosecution under Virginia state law. On February 5, 2024, Graham filed a Motion to Dismiss, in which, Graham requests dismissal of Plaintiffs' claims against him in their entirety. On February 20, 2024, Plaintiffs filed a Response and Memorandum in Opposition to the Motion to Dismiss (the "Opposition Brief"). Graham now files this Reply Brief.

## II.    OVERVIEW

Graham submits that this Court should find that he properly supplemented the Motion to Dismiss with documents, records, and other materials that *can and should* be considered at this stage of proceedings. Graham also submits that this Court should find that Plaintiffs have failed to state a claim for Section 1983: Fourth Amendment Malicious Prosecution to the extent that Plaintiffs named Graham as a defendant in his official capacity as a detective with the Town of Leesburg Police Department because Graham was shielded by absolute sovereign immunity. Further, this Court should find that Plaintiffs have failed to state a claim for Section 1983: Fourth Amendment Malicious Prosecution against Graham in his individual capacity because Plaintiffs failed to pierce his qualified immunity by establishing that Graham deprived them of their Fourth Amendment rights. Finally, Graham submits that this Court should dismiss Plaintiffs' Virginia state

law Malicious Prosecution claims because Plaintiffs fail to show Graham instigated or cooperated with the investigation, there was a lack of probable cause or that Graham acted with malice.

### III.   ARGUMENT

#### a.   Graham properly supported his Motion to Dismiss with public records, documents, and other materials.

Graham properly supported his Motion to Dismiss with extrinsic evidence consisting of public records, as well as documents and other materials central to Plaintiffs' claims or otherwise referred to in Plaintiffs' Complaint. As previously explained, this Court "may . . . consider official public records, documents central to [Plaintiffs'] claim, and documents sufficiently referred to in the [C]omplaint [without converting a Rule 12(b)(6) motion into one for summary judgment] so long as the authenticity of these documents is not disputed." *Witthohn v. Feds. Ins., Co*., 164 Fed. Appx. 395, 396-397 (4th Cir. 2006) (citing *Alt. Energy, Inc. v. St Paul Fire & Marine Ins. Co*., 267 F.3d 30, 33 (1st Cir 2001); *Phillips v. LCI Int'l, Inc*., 190 F.3d 609, 618 (4th Cir. 1999); *Gasner v. County of Dinwiddie*, 162 F.R.D. 280, 282 (E.D. Va. 1995).

This Court may also take judicial notice of matters of public record that are not attached to a complaint, including police reports. *Gasner*, 162 F.R.D. at 282.; *Sec'y of State for Defense v. Trimble Navigation Ltd*. 484 F.3d 700, 705 (4th Cir. 2007) (citing *Hall v. Virginia*, 385 F.3d 421, 424 (4th Cir. 2004) (holding that a court can consider pertinent documents, including official public records, attached to defendant's motion to dismiss that plaintiff should have attached in the complaint); *Cobin v. Hearst-Argyle Television, Inc*., 561 F.Supp.2d 546, 550-51 (D.S.C. 2008) (holding that courts can take judicial notice of a police report, that is not attached to a pleading as a matter of public record). To that end, a federal district court may "consider matters of public record such as documents from prior state court proceedings in conjunction with a Rule 12(b)(6) motion." *Walker v. Kelly*, 589 F.3d 127, 139 (4th Cir. 2009); *Brown v. Ocwen Loan Servicing, LLC*,

Civ No. PJM 143454, 2015 U.S. Dist. LEXIS 110133, 2015 WL 5008763 at *1 n.3 (D. Md. Aug 20, 2015) (the court can "take judicial notice of docket entries, pleadings and papers in other cases without converting a motion to dismiss into a motion for summary judgment").

Plaintiffs do not cite any case law that contradicts these standards. Opposition Brief at p. 2, 12-17. And, despite Plaintiffs raw assertion to the contrary (Opposition Brief at p. 2, 12-17), the case law is clear that Graham's introduction of extrinsic evidence in this matter does not convert his Motion to Dismiss into a Motion for Summary Judgment. *See, e.g., Thweatt v. Rhodes*, 2021 U.S. Dist. LEXIS 21948 (E.D. Va. Feb. 4, 2021) (considering extrinsic documents on a 12(b)(6) motion, including a video of an altercation referenced in the Complaint and a letter about the incident which followed, without converting the motion to a motion for summary judgment, and dismissing malicious prosecution claims).

Here, Graham supplemented his Motion to Dismiss with the following documents, records, and other materials:

- **Exhibit A:**[1] Y.A.'s family report of bullying and sexual assault of Y.A. to the school and subsequently to Graham (as referenced in Paragraph 25 of the Complaint).
- **Exhibit B:** A.D.'s forensic interview which followed his initial report (as referenced in Paragraph 29 of the Complaint).
- **Exhibit C:** Y.A.'s interview at the Child Advocacy Center (as referenced in Paragraph 28 of the Complaint) during which Plaintiffs falsely claim that Y.A. denied A.D.'s account of Plaintiffs sexually assaulting him.
- **Exhibit D:** Graham's telephone call with L.M.'s father (as referenced in Paragraph 37 of the Complaint).
- **Exhibit E:** Graham's Affidavit in Support of a Search Warrant, which is an official public record detailing his investigation.
- **Exhibit E:** Graham's Case Supplement, an official police report detailing his investigation, which Plaintiffs characterize as "produc[ing] no evidence upon which a reasonable person would rely to establish probable cause that an assault took place or that L.M. , M.G., or E.R. were culpable of any crime." Compl. at ¶ 33.

---

[1]     Graham labeled the Exhibits as 1-5; however, Plaintiff refers to them as Exhibits A-E. To avoid confusion, Graham will refer to the Exhibits A-E throughout this Reply Brief.

*See* Motion to Dismiss at p. 4-5. Graham's extrinsic evidence should be considered at this stage of the proceedings. In fact, Plaintiffs' primary issue with the extrinsic evidence submitted by Graham is that Plaintiffs allegedly did not have "access"[2] to the evidence when they filed their Complaint. Opposition Brief at p. 2. However, the law does not require Plaintiff to have "access" to the evidence before Graham can attach it in support of his Motion to Dismiss. Rather, it *only* requires (1) the extrinsic evidence to be "central to [Plaintiffs] claim . . . [or] . . . sufficiently referred to in the [C]omplaint" and (2) the authenticity of the evidence not to be in dispute. *Witthohn*, 164 Fed. Appx. at 396-397. In the Opposition Brief, Plaintiffs do not dispute that Exhibits A-E were either official public records, evidence central to Plaintiffs' claims, or evidence sufficiently referred to in the Complaint. Opposition Brief at p. 2, 12-17. Plaintiffs also do not dispute the authenticity of Exhibits A-E. *Id.* At best, Plaintiffs raise questions regarding the investigative process, not the Exhibits themselves. *Id.* at 14. Therefore, this Court can and should consider Graham's Exhibits A-E in conjunction with his Motion to Dismiss.

 **b. Plaintiffs' Section 1983: Fourth Amendment Malicious Prosecution claim (Count I of the Complaint) should be dismissed.**

  **i. Graham is shielded from liability for damages in his official capacity as a detective with the Town of Leesburg Police Department.**

---

[2] It is unclear what efforts, if any, were made by Plaintiffs to obtain the records, documents, and other materials. It is also inexplicable how Plaintiffs claim that they did not have access to materials, such as the interviews of A.D. and Y.A. In fact, at paragraph 2 of the Complaint, Plaintiffs claim that "A.D.'s description of the alleged sexual assault was confusing and unrealistic," and at paragraph 4 of the Complaint, they contend that, "the alleged victim Y.A. was exhaustively interviewed and denied ever being assaulted, he was unaware of to what [sic] A.D. was referring." Plaintiffs cannot be permitted to seemingly quote or make specific references to interviews, which do not contain the statements which are set forth in the Complaint, and then complain that they did not have access to and the court should not consider the actual interviews.

Plaintiffs' Section 1983: Fourth Amendment Malicious Prosecution claim fails to the extent that the Complaint names Graham as a defendant in his official capacity as a detective with the Town of Leesburg Police Department, because official capacity claims for damages are barred by absolute sovereign immunity. Compl. at p. 1 (noting that Graham was sued in both his "individual" and "official" capacities).

As previously mentioned, Plaintiffs' official-capacity claim is actually a claim against the governmental entity of which Graham is an agent and is barred by sovereign immunity under the Eleventh Amendment. *Wyche v. City of Franklinton*, 837 F. Supp 137, 144 (E.D.N.C 1993) ("A suit against a city official in his official capacity is a suit against the city itself."); *Niese v. City of Alexandria*, 264 Va. 230, 564 S.E.2d 127, 132 (2002) (because a municipality "acts in its official capacity . . .  in maintaining a police force . . . a police officer is immune for a police officer's negligence in the performance of his duties as a police officer."); *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71, 109 S. Ct. 2304, 105 L.E.d 2d 45 (1989) (officials sued in their official capacity are immune from monetary damages under the Eleventh Amendment because they are not considered "persons" under Section 1983); *Ballenger v. Owens*, 352 F.3d 842, 843 (4th Cir. 2003) (dismissing claims against South Carolina state trooper to the extent those claims were brought against the state trooper in his official capacity.).

In the Opposition Brief, Plaintiffs do not dispute that they named Graham as a defendant in his official capacity as a detective with the Town of Leesburg Police Department. *See* Opposition Brief at p. 11 ("The claims against Graham in his official capacity thus lie viable against the municipality of Leesburg, Virginia") and Compl. at p. 1 (noting that Graham was sued in his "official" capacity). Rather, Plaintiffs disregard the case law demonstrating that they cannot sue Graham for damages in his official capacity as a detective with the Police Department. In doing

so, Plaintiffs suggest that governmental officials acting in their official capacity, such as police officers, may be liable for damages when they act recklessly. In support of this erroneous proposition, Plaintiffs disingenuously cite *Baka v. City of Norfolk*, 2022 U.S. Dist. LEXIS 43559, *13 (E.D. Va. Mar. 11, 2022). Opposition Brief at p. 11. In *Baka*, the court held that a city fire department was not shielded by absolute sovereign immunity when it internally discriminated against employees based on sex because the fire department was not acting in an official government capacity. *Id.* at *18-19. The Court in *Baka* explained that "these intra-department conditions are too remote from the public interest and welfare to constitute a government function." *Id.*

The present case could not be any more distinguishable from *Baka*. Here, Graham was acting in his official capacity as a detective while investigating a reported sexual assault at a school. This is the precise type of public service that police departments and their police officers are created and hired, respectively, to provide. To the extent that Graham engaged in any tort while acting in this official capacity, which he adamantly denies, he is shielded by absolute sovereign immunity under the Eleventh Amendment. *Niese,* 264 Va. at 239 (because a municipality "acts in its governmental capacity . . . in maintaining a police force . . . a police officer is immune for a police officer's negligence in the performance of his duties as a police officer.").

Finally, Plaintiffs cite to *Miller v. Prince George's County, MD*, 475 F.3d 621, 627 (4th Cir. 2007), *Wilson v. Russo*, 212 F. 3d 781, 788 (3d Cir. 2000), and *Beauchamp v. City of Noblesville, Inc*., 320 F.3d 733, 743 (7th Cir. 2003) to argue that absolute sovereign immunity can be lost when an official engages in reckless behavior. Opposition Brief at p. 6. However, all three cases involve suits against governmental officials ***in their individual capacities*** (as opposed to their official

capacities) and hence only relate to qualified immunity (as opposed to absolute sovereign immunity).[3]

For the foregoing reasons, Graham respectfully requests that Plaintiffs' Section 1983: Fourth Amendment Malicious Prosecution claim (Count I of the Complaint) dismissed to the extent Plaintiffs named him as defendant in his official capacity as a detective for Town of Leesburg Police Department.

### ii. Graham is shielded from liability for damages in his individual capacity under the qualified immunity doctrine.

Plaintiffs fail to overcome Graham's qualified immunity from suit in his individual capacity. To overcome qualified immunity, Plaintiffs must establish:

1. Graham violated a statutory or constitutional right; ***and***
2. The right was clearly established.

*Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001). A court may begin its analysis with either prong. "If a plaintiff fails to allege an official right has been violated, . . . the analysis ends right then and there." *Evans v. Chalmers*, 703 F.3d. 636, 646 (4th Cir. 2007) (quoting *Abney v. Coe*, 493 F.3d 412, 415 (4th Cir. 2007)). As for the second prong, the qualified immunity test distills to one of objective reasonableness. *Torchinsky v. Siwinski*, 942 F.2d 257, 261 (4th Cir. 1991). "This objective test involves an inquiry into whether a government official has violated any clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 396 (1982). Significantly, the United States Supreme Court has advised trial courts that the question of qualified immunity should be addressed at the earliest stage of proceedings. *Pearson*

---

[3]       Ironically, Plaintiffs cite *Miller,* 475 F.3d at 627 in the qualified immunity section of their Opposition Brief to establish the standard for qualified immunity. Opposition Brief at p. 7.

*v. Callahan,* 555 U.S. 223, 232, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009) ("we repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation); *Anderson v. Creighton*, 483 U.S. 635, 640, n.2, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1981) (the "driving force" behind the creation of the qualified immunity doctrine was a desire to ensure that "'insubstantial claims' against government officials will be resolved prior to discovery."). Here, Plaintiffs merely allege that, pursuant to Section 1981, Graham maliciously prosecuted them in violation of their Fourth Amendment rights under the United States Constitution.[4] Compl. at ¶ 51.

Plaintiffs fail to state a claim for Section 1983: Fourth Amendment Malicious Prosecution because Plaintiffs cannot establish the deprivation of their Fourth Amendment rights. To state a claim for Section 1983: Fourth Amendment Malicious Prosecution, Plaintiffs must allege that Graham:

**(1) caused**
(2) **a seizure of Plaintiffs pursuant to legal process unsupported by probable cause**, and
(3) criminal proceedings were terminated in Plaintiffs' favor.

*Evans v. Chalmers*, 703 F.3d 636, 647 (4th Cir. 2012) (citing *Durham v. Horner*, 690 F.3d 183, 188 (4th Cir. 2012)). As previously mentioned, Plaintiffs have only alleged facts sufficient to establish the **third** element of their Section 1983: Fourth Amendment Malicious Prosecution claim *i.e.,* that criminal proceedings were terminated in Plaintiffs' favor.  Plaintiffs wholly fail to establish the **first** and **second** elements.

1.  ***Plaintiffs fail to sufficiently allege that Graham caused their seizures.***

---

[4]  Plaintiffs also cite the Fourteenth Amendment but presumably because the Fourteenth Amendment is the vehicle through which the Fourth Amendment has been imposed on the states.

Plaintiffs do not sufficiently and plausibly allege that Graham caused their seizure. For Graham to have caused Plaintiffs' seizure, Plaintiffs must show "both but-for and proximate causation." *Evans*, 703 F.3d at 647. Plaintiffs fail to establish either.

As an initial matter, Plaintiffs incorrectly and implausibly allege that Graham instituted criminal proceedings against Plaintiffs (Compl. at ¶ 52) and requested the issuance of Plaintiffs' arrest warrants (Compl. at ¶ 54). The record shows:

(1) The Town of Leesburg Police Department assigned Graham to investigate a reported aggravated sexual assault. Exhibit B at p. 3.
(2) Graham presented the information that he obtained during his investigation to the ACA.
(3) The ACA then instructed Graham to present the information he had obtained to Juvenile Intake.
(4) Graham presented the information to Juvenile Intake.
(5) Pursuant to VA Code § 16.1-260, Juvenile Intake made the probable cause determination. Intake is the only person with authority to do so.
(6) Also, pursuant to VA Code § 16.1-260, Juvenile Intake filed the Juvenile Petitions. Intake is the only person with authority to do so.[5]

Notwithstanding that Graham did not and could not institute criminal proceedings against the minor Plaintiffs, they incorrectly and implausibly allege that "[d]espite the substantial exonerating evidence in his possession, [] Graham provided an incomplete and false statement to support **his** requests for arrest petitions for L.M., M.G., and E.R." Compl. at ¶53. (Emphasis added). Because only Juvenile Intake has the authority to swear out petitions against Plaintiffs, pursuant to VA Code § 16.1-260, Plaintiffs' allegations are impossible and hence fatal to their Section 1983 claims. Graham did not make a probable cause determination, nor did he request arrest petitions for Plaintiffs. Rather, Graham reported what his investigation had uncovered to Juvenile Intake for Intake to make the final judgment call. *Evans*, 703 F.3d at 647 ("action taken

---

[5]   This Court should take judicial notice of VA Code § 16.1-260. As a result, this Court should find that Plaintiffs incorrectly allege that Graham swore out juvenile petitions against Plaintiffs. Compl. at ¶6. Pursuant to VA Code § 16.1-260, only Juvenile Intake has the ability to swear out petitions against Plaintiffs.

by an independent decision-maker 'may constitute an intervening superseding cause that break[s] the causal chain." breaks the chain of causation'"). Therefore, Graham did not ***cause*** the Plaintiffs' seizure.

In their Opposition Brief, Plaintiffs improperly attempt to correct their Complaint's fatal flaw by alleging:

> Graham provided incomplete and misleading information to both the prosecutor and the Juvenile Intake Unit that caused Plaintiffs to be arrested. Had Graham provided **all** the information he learned during his brief 'investigation,' no prosecutor or judicial officer would have allowed the case to proceed.

Opposition Brief at p. 8. To the extent that Plaintiffs' Opposition Brief alleges that Juvenile Intake made determinations based on Grahams allegedly "incomplete and misleading" information, this Court may not consider those arguments because they are not contained within the four corners of Plaintiffs' Complaint. *Marsh v. Va. DOT*, 2014 U.S. Dist. LEXIS 167333, *25-26 (2014) ("'[I]t is **axiomatic** that the complaint may not be amended by the briefs in opposition to a motion to dismiss. To hold otherwise would mean that a party could unilaterally amend a complaint at will, even without filing an amendment, and simply by raising a point in a brief.'"); *Glenn v. Wells Fargo Bank, N.A.*, No. DKC-3058, 2016 U.S. Dist. LEXIS 85824, 2016 WL 3570274 at *9 (D. Md. July 1, 2016) (finding that "Plaintiff's attempt to amend the complaint by filing a declaration would be inappropriate even if he had attached the declaration to his opposition brief"); *Davis v. Cole*, 999 F. Supp. 809, 813 (E.D. Va. 1998) (refusing to consider additional allegations offered in response to motion to dismiss).

2. ***Plaintiffs fail to sufficiently allege that their seizure was unsupported by probable cause.***

Next, Plaintiffs fail to show that their seizure was unsupported by probable cause that Plaintiffs had committed aggravated sexual battery against Y.A. Under Virginia law, "aggravated

sexual battery" is established if there is evidence that a person sexually abuses a person (a) under the age of 13; or (b) through the use of the victim's mental incapacity or helplessness. VA Code 18.2-67.3. Here, Plaintiffs and Graham agree that Y.A. was under the age of 13 and had diminished mental capacity or helplessness due to his autism diagnosis. Compl. at ¶ 1 (noting that Y.A. is 11 years-old and autistic). Therefore, the only question left is whether there was probable cause to show that Plaintiffs sexually abused Y.A.

As previously explained, the Fourth Amendment provides: "[t]he right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated and no Warrants shall issue, but upon probable cause." U.S. Const. Amend. IV. "Probable cause . . . is not a high bar: it requires only the kind of 'fair probability' on which reasonable prudent [people,] not legal technicians, act." *Ornelas v. United States*, 571 U.S. 320, 338 (1996) Probable cause is assessed under the totality of the circumstances. *Taylor v. Waters*, 81 F.3d 429, 434 (4th Cir. 1996). "While probable cause requires more than 'bare suspicion,' it requires less than that evidence necessary to convict." *United States v. Gray*, 137 F.3d 765, 769 (4th Cir. 1998). The arresting officer's belief need not be correct or even more likely true than false. *Texas v. Brown*, 460 U.S. 730, 742, 103 S. Ct. 1535, 75 L. Ed. 2d 502 (1983). The Fourth Circuit has rejected the more likely than not argument. *United States v. Humphries*, 372 F.3d 653, 660 (4th Cir. 2004).

Here, the face of Plaintiffs' Complaint sufficiently demonstrates probable cause existed, showing that Plaintiffs had committed aggravated sexual battery against Y.A. Indeed, Plaintiffs' Complaint admits that:

(1) A.D. had reported in detail seeing Plaintiffs sexually assault Y.A. during P.E. class. Compl. at ¶ 1-3.

Given that A.D. was an independent witness, this allegation, standing alone, should be sufficient probable cause to make an arrest whether or not it later turned out to be false. *Torchinsky v. Siwinski*, 942 F.2d 257, 263 (1991) (holding that probable existed where there was only one witness: the victim himself. "Here, for example, there was only **one witness** to a brutal attack, the victim himself. Ideally, of course, additional witnesses would have been available and the victim would not have been so brutalized.")(emphasis added).

Furthermore, the recordings of interviews with A.D. (on October 26, 2022) and Y.A. (on November 3, 2022), provided under seal to the court, further establish probable cause when:

(1) A.D. provided a detailed statement that Plaintiffs had sexually assaulted Y.A.;
(2) A.D. made a positive identification of Plaintiffs both verbally and by photo line-up;
(3) Graham learned that A.D. made the statement to multiple persons even before his interview with A.D.;
(4) Y.A. reported that acts of S.E.X. had been committed against him, corroborating A.D.'s report that Y.A. had been sexually assaulted; and
(5) Y.A. provided a detailed description of multiple sexual acts of abuse committed against him over a period of time.

*Pasiewicz v. Lake Cty. Forest Pres. Dist.*, 270 F.3d 520, 524 (7th Cir. 2001) (holding that probable cause existed to make an arrest for indecent exposure because the suspect bore a "fair resemblance" to physical descriptions given by two witnesses, and because one witness saw the suspect the day after the incident and identified him as the suspect); *Shriner v. Wainwright*, 715 F.2d 1452, 1454 (11th Cir. 1983) (holding that that an officer had probable cause to stop and arrest Shriner for committing two robberies because he bore a "striking resemblance" to a physical description and composite sketches of the suspect provided by three witnesses, and because he was found a day after the crimes were committed in the same county). What is more, Plaintiffs acknowledge that Juvenile Petitions, which require a probable cause determination by Juvenile Intake pursuant VA Code § 16.1-260, were issued for their arrest on November 9, 2022 based on Graham's investigation, including A.D.'s and Y.A.'s interviews. Compl. at ¶ 6.

Nevertheless, in the Opposition Brief, Plaintiffs dispute the existence of probable cause primarily by suggesting that A.D.'s statement was not corroborated by Y.A.'s statement. Plaintiffs state:

> Graham's reliance on Y.A.'s statement that unknown individuals had 'committed S.E.X. against him failed to corroborate A.D.'s false claims and did nothing to identify Plaintiffs as the perpetrator.

Opposition Brief at 10. This assertion is patently false. Plaintiffs clearly cherry pick the facts and misinterpret the law. Y.A. merely stated that he did not know the Plaintiffs' names. He did not state that he could not identify them. But, even if he could not identify them, Y.A. identified A.D., as a witness to his alleged sexual assault, who did know Plaintiffs by name and identified them in a photo line-up and by reference to a prior interaction, as it pertains to L.M. *United States v. Simpson*, 2014 U.S. Dist. LEXIS 61558, *13 (2014) ("Nor would the inclusion of information regarding one witness' failure to identify Mr. Simpson in a photographic lineup or the absence of Mr. Simpson's fingerprints in one of the victims' cars necessarily have defeated probable cause, as no other positive identifications were made and other evidence [was] provided in the affidavit . . . upon which the warrant could issue). Here, A.D. corroborated Y.A.'s account that he was assaulted, and even identified Plaintiffs by name, by reference and/or in a photo line-up. This is clearly sufficient to establish probable cause. *Franks v. Delaware*, 438 U.S. at 155-56; *Pasiewic.*, 270 F.3d at524; *Shriner*, 715 F.2d at 1454; and *Ornelas*, 571 U.S. at 338 ("Probable cause . . . is not a high bar: it requires only the kind of 'fair probability' on which reasonable prudent [people,] not legal technicians, act.").

To the extent that Plaintiffs harp on their belief that Graham should have evaluated A.D.'s credibility and been leery of his report as a result, Plaintiffs have failed to cite any caselaw that required Graham to do so. As Graham pointed out in his opening brief, officers are "not required

to sift through conflicting evidence or resolve issues of credibility, so long as the totality of the circumstances present a sufficient basis for believing that an offense has been committed." *Dahl v. Holley*, 312 F.3d 1228, 1234 (11th Cir. 2002), abrogated on other grounds by *Lozman v. City of Riviera Beach*, 136 S. Ct. 1945, 1953 (2018); *see also Doe v. Smith*, 2018 U.S. Dist. LEXIS 243326, at * 25 (N.D. Ga. Nov. 14, 2018) (officer is not required to resolve conflicting testimony in making probable cause determination. Her job was to consider the totality of the evidence.); *Willis v. Blevins*, 2014 U.S. Dist. LEXIS 8576, at * 12 (E.D. Va. Jan. 23, 2014) (where the officer chose to believe one of the witnesses present when a crime allegedly occurred over another, he cannot be held legally responsible for the credibility of the witness whom he opted to believe).[6]

Further, Plaintiffs' insistence that probable cause did not exist because L.M. had an alibi, in that he was in music class on the opposite side of the school when the assaults allegedly occurred, does not defeat probable cause.[7] The fact remains that, by Plaintiffs' own pleading, A.D. provided affirmative eye-witness testimony to the contrary. With that, Graham did not have to determine which was, in fact accurate, assuming Graham even had this information available to him at the time he submitted his case file to the ACA and Juvenile Intake. And, again, Graham was

---

[6] It is also notable, that the Plaintiffs have not pled any facts which suggest why Graham should have questioned A.D.'s credibility in the first place, other than he had apparently had a dispute with L.M. earlier in the year. It is impossible to understand how that dispute would lead A.D. to fabricate a story which included abuse of Y.A., not only by L.M., but by the other Plaintiffs, as well.

[7] Plaintiffs overstate in their Opposition Brief what is alleged as far as L.M.'s whereabouts at the time of the alleged assaults. They do not allege that L.M. had a "verified alibi," but simply indicate that he had music class during the time the other boys had gym, and "movement is tightly controlled and access to P.E. locker rooms is strictly monitored." Complaint, ¶ 2. Plaintiffs continue not by stating that Graham had actual knowledge of L.M.'s physical presence somewhere other than the locker room, but complain that it "would have been quick and easy to verify which children were in the same locker room as A.D. and the alleged victim Y.A." *Id.* Again, this is a complaint about Graham not doing *further* investigation, after he already had a positive identification of Plaintiffs in the locker room from A.D.

not the person in this case to make the probable cause determination, despite the fact that the evidence he had gathered clearly demonstrated reasonable probable cause.

For the foregoing reasons, Graham respectfully requests that Plaintiffs' Section 1983: Fourth Amendment Malicious Prosecution claim (Count I of the Complaint) be dismissed with prejudice.

### c. Plaintiffs' Virginia State Law Malicious Prosecution Claim (Count III of the Complaint) Should Be Dismissed.

As previously explained, Plaintiffs fail to state a claim for Malicious Prosecution under Virginia state law because Plaintiffs fail to show Graham instigated or cooperated with the investigation, there was a lack of probable cause or that Graham acted with malice. Malicious prosecution claims are disfavored in Virginia. *Reilly v. Shepherd*, 273 Va. 728, 733, 643 S.E.2d 216 (2007). To state a claim for malicious prosecution under Virginia state law, Plaintiffs must plead and prove that the prosecution was:

(1) Malicious
(2) Instigated by or with the cooperation of Graham
(3) Without probable cause, and
(4) Terminated in a manner not unfavorable to Plaintiffs.

*O'Connor v. Tice*, 281 Va. 1, 7, 704 S.E.2d 572, 575 (2011). This means that Virginia law adds one additional element to the claim that is not required by federal law *i.e.,* malice. "In the context of a malicious prosecution claim, malice is defined as any controlling motive other than a good faith desire to further the ends of justice, enforce obedience to the criminal laws, suppress crime, or see that the guilty are punished." *Hudson v. Lanier*, 255 Va. 330, 333, S.E.2d 471, 473 (1988). ". . . [M]alice must exist in fact, and its existence must be proven as any other fact. It may be established by inference drawn from the facts and circumstances proved, where they warrant such an inference." *Freezer v. Miller*, 163 Va. 180, 203, 176 S.E. 159, 168 (1934). "Malice may be inferred

. . . for want of probable cause." *Lee v. Southland Corp*., 219 Va. 23, 27, 244 S.E. 2d 756, 759 (1978).

As for element two, Plaintiffs have failed to plead or otherwise show the prosecution was instigated by or with cooperation of Graham. To establish that Graham instigated or cooperated with the prosecution, Plaintiffs must show that he: (1) affirmatively, actively, and voluntarily took steps to (a) instigate or to (b) participate in the arrest of Plaintiffs, and (2) Graham exercised some level of control over the decision to have Plaintiffs arrested. *In re Almanza*, 2018 Va. Cir. LEXIS 2855, *14 (2018). Illustrating the application of these principles, the Virginia circuit court in *In re Almanza*, held that officers who were called to a scene as back up and searched the plaintiffs' car were not sufficiently involved in the plaintiffs' prosecution for plaintiffs to state a claim for malicious prosecution. *Id.* There, one officer requested back up when he approached the plaintiffs' vehicle, and they refused to provide I.D. on request. *Id.* In response to the request for backup, several other officers arrived on the scene and searched the plaintiffs' vehicle while the initial officer continued to engage the plaintiffs. In dismissing the case against the searching officers, the court reasoned that it could not conclude that:

> [The searching officers] 'affirmatively, actively, and voluntarily took steps to instigate or to participate' in the arrest of [p]laintiffs. Clearly, they did not take the original steps to initiate the arrests of [p]laintiffs. Nor can the Court reasonably conclude from the allegations in the Amended Complaint [the searching officers] 'exercised some level of control over the decision to have the plaintiff arrested.'

The court explained that, "a plaintiff does not have plausible grounds for malicious prosecution against every single officer who arrives at an incident scene or has some transient or limited involvement in an investigation." *Id.*

Here, Plaintiffs' Complaint, Graham's supplementation to his Motion to Dismiss, and the law clearly show that Graham had limited involvement in the investigation. To recap:

(1) Town of Leesburg Police Department assigned Graham to investigate a reported aggravated sexual battery. Exhibit B at p. 3.
(2) Graham presented the information that he obtained during his investigation to the ACA.
(3) The ACA then instructed Graham to present the information he had obtained to Juvenile Intake.
(4) Graham presented the information to Juvenile Intake.
(5) Pursuant to VA Code § 16.1-260, Juvenile Intake made the probable cause determination. Intake is the only person with authority to do so.
    Also, pursuant to VA Code § 16.1-260, Juvenile Intake filed the Juvenile Petitions. Intake is the only person with authority to do so.

As for prong (1)(a), the investigation was affirmatively, actively, and voluntarily instigated by the Town of Leesburg Police Department (as opposed to Graham) when the school reported that it had received an accusation of aggravated sexual battery and the Police Department assigned Graham to investigate the matter. Although Graham may have participated in the ultimate detention of Plaintiffs by nature of his assignment to the case, with respect to prong (2), Plaintiffs have failed to sufficiently allege that Graham exercised some level of control over the decision to have Plaintiffs arrested. In fact, the law clearly indicates that the decision-making authority to arrest minors is vested solely with Juvenile Intake. Accordingly, Graham's involvement in the chain of events leading to Plaintiffs' arrest was broken when the ACA and later Juvenile Intake, made probable cause determinations as well as when Juvenile Intake filed the Juvenile Petitions.

As for element three, Plaintiffs have not plead sufficient facts to establish lack of reasonable probable cause for their arrest. Graham discussed the probable cause analysis extensively in Section III(b)(ii) above and in his Motion to Dismiss. He relies on those arguments here. Further, Plaintiffs' Opposition Brief concedes by omission of an argument to the contrary that Plaintiffs failed to pled that Graham acted with malice. Opposition Brief at p. 12. Rather, Plaintiffs rely on the alleged want of probable cause. *Id.* (". . . "[m]alice may be inferred from a lack of probable cause . . . Plaintiffs arguments and support as articulated in sections (a), (b), and (c) above support the denial of Graham's Motion to Dismiss). Because Plaintiffs failed to plead sufficient facts to

18

show lack of probable cause, they also fail to establish malice. The only allegations of malice contained in Plaintiffs' Complaint are conclusory in nature. Plaintiffs did not plead any specific facts that tend to show Graham acted with any motive other than to fulfill his role as a sworn law enforcement officer assigned to investigate the reported aggravated sexual battery.

For the foregoing reasons, Graham respectfully requests that Plaintiffs' Virginia State Law Malicious Prosecution claim (Count III of the Complaint) be dismissed with prejudice.

### d. Plaintiffs should not be permitted an opportunity to conduct discovery before the court rules on Graham's Motion to Dismiss.

At the conclusion of their Opposition Brief, Plaintiffs argue that they must be allowed time to conduct discovery before the court rules on the Motion to Dismiss. They contend that this is necessary because Graham's inclusion of extrinsic documents would turn the Motion to Dismiss into a Motion for Summary Judgment. Plaintiffs cite to "CITE" to support this argument. Opposition Brief, p. 15. There are two (2) problems with Plaintiffs' argument.

Number one: the inclusion of the extrinsic documents referenced by Graham is permissible under Rule 12(b)(6), without converting the motion to a motion for summary judgment, as argued above. Plaintiffs cannot refer to interviews in the Complaint, characterize them as not supporting probable cause, and then complain when the court considers the actual interviews for purposes of a motion to dismiss. The same is true as it pertains to the case file Graham compiled and provided to the ACA and Juvenile Intake. If Plaintiffs want to argue that false or incomplete information was provided, then Graham is entitled to have the court look at that information at the motion to dismiss phase without turning the motion into a motion for summary judgment.

Number two: to successfully request that the court forego ruling on a motion for summary judgment (if the court converted the motion to dismiss to such a motion) because of the purported need to conduct discovery, one is **required** to "show[] by affidavit or declaration that, for specified

reasons, it cannot present facts essential to justify its opposition." F.R.C.P. 56(b). Here, no such declaration or affidavit has been filed, and Plaintiffs have not demonstrated the specific reasons they cannot present facts essential to justify their opposition. No amount of discovery will change the fact that Graham did not and could not swear out warrants for Plaintiffs or make the probable cause determination. No amount of discovery will change the fact that Graham had a positive identification by A.D. that Plaintiffs sexually assaulted Y.A.  No amount of discovery will change the fact that reasonable probable cause existed for Plaintiffs' arrests.

Discovery is not required and should not be permitted before the court rules on the motion to dismiss, because the court can do so, while considering the materials which Graham submitted, without converting the motion to a motion for summary judgment. And, even if the court was to convert the motion to dismiss into a motion for summary judgment, Plaintiffs have not complied with Rule 56(d), and are not entitled to discovery before the court rules on the pending motion.

## IV.   CONCLUSION

Defendant Jonathan Graham, by and through counsel, pursuant to Federal Rule of Civil Procedure 12(b)(6), respectfully requests that this Court grant his Motion to Dismiss him with prejudice from the above-captioned matter.

**Respectfully submitted,**
**JONATHAN GRAHAM**
**By Counsel**

20

McGAVIN, BOYCE, BARDOT,
  THORSEN & KATZ, P.C.
9990 Fairfax Boulevard, Suite 400
Fairfax, Virginia 22030
Telephone:     (703) 385-1000
Facsimile:     (703) 385-1555
hbardot@mbbhjlaw.com


_____/s/_____
Heather K. Bardot, Esquire
VSB No. 37269
*Counsel for Defendant, Graham*

## CERTIFICATE OF SERVICE

I hereby certify that on the 26th day of February, 2024, I electronically filed the foregoing pleading with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Daniel H. Goldman, VSB #82144
The Law Office of Daniel Goldman, PLLC
421 King Street, Suite 505
Alexandria, Virginia 22314
Tel: (202) 677-5709
Fax: (833) 523-2310
dan@dangoldmanlaw.com
Counsel for Plaintiffs

Jonathan P. Sheldon, VSB #66726
Sheldon & Flood, PLC
10621 Jones Street, Suite 301A
Fairfax, VA 22030
Office (703) 691-8410
Fax (703) 991-7413
JSheldon@SFHDefense.com
Counsel for Plaintiffs

Jeremy D. Capps, Esquire (VSB No. 43909)
Harman, Claytor, Corrigan & Wellman
P.O. Box 70280
Richmond, Virginia 23255
804-747-5200 - Phone
804-747-6085 - Fax
jcapps@hccw.com
Counsel for Defendants, Loudoun County
Juvenile Detention Center and John Does #4 and #5

McGAVIN, BOYCE, BARDOT,
  THORSEN & KATZ, P.C.
9990 Fairfax Boulevard, Suite 400
Fairfax, Virginia 22030
Telephone:    (703) 385-1000
Facsimile:     (703) 385-1555
hbardot@mbbhjlaw.com


_____/s/_____
Heather K. Bardot, Esquire
VSB No. 37269
*Counsel for Defendant, Graham*