UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| L.M., et al.,<br>   *Plaintiffs*,<br><br> v.<br><br>JONATHAN GRAHAM, et al.,<br>   *Defendants.* | No. 1:23-cv-01574 (MSN/IDD) |

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendant Jonathan Graham's Motion to Dismiss (ECF 16) and Defendant Michelle Smith's Motion to Dismiss (ECF 23). Plaintiffs are three children, L.M., M.G., and E.R., who allege they were arrested and detained as a result of false accusations made by their classmate, A.D., who accused them of sexually assaulting Y.A., another classmate with autism.[1] Plaintiffs bring malicious prosecution claims against Detective Jonathan Graham, who investigated the allegations, a Section 1983 claim for unreasonable search against Michelle Smith, Superintendent of the Loudoun County Juvenile Detention Center, and Section 1983 claims and state law assault and battery claims against three John Doe defendants, employees at the Loudoun County Juvenile Detention Center. Because Plaintiffs have failed to state a claim against Defendants Graham and Smith, those claims will be dismissed.

**I. BACKGROUND**

This case involves events stemming from allegations that students sexually assaulted Y.A., an eleven-year-old boy with autism, on more than one occasion in a locker room at school. On

---

[1] Plaintiffs moved to proceed pseudonymously. *See* ECF 2. Because Defendants do not object to that motion, and given the sensitive nature of the allegations and the ages of the children involved, the Court finds it is appropriate to grant the motion.

October 23, 2022, Y.A.'s brother emailed officials at Loudoun County Public Schools to report that he had heard that Y.A. was being bullied and sexually assaulted by other students and that because of his autism, Y.A. had difficulty understanding and stopping the assaults. *See* ECF 1 ("Compl.") ¶ 25; ECF 21-1 at 3. The emails between school officials and Y.A.'s family were ultimately forwarded to Detective Graham two days later on October 25, 2022. ECF 21-1 at 1.

Detective Graham questioned A.D., who reportedly witnessed the alleged assault, at school. ECF 21-2 at 4; ECF 21-4 at 1. A.D. identified three students he had observed sexually assault Y.A. on more than one occasion. *Id.* These students included persons with the same first names as Plaintiffs L.M. and M.G., and A.D. identified the third student as an Hispanic male. *Id.* A.D. stated that on two occasions he had seen the three students hold Y.A. against the wall in the locker room and grab Y.A.'s genitals. ECF 21-2 at 4; ECF 21-4 at 1. Afterwards, A.D.'s mother called Detective Graham to report that he had shared more information with her than he had initially shared with Graham, so they agreed A.D. would do a forensic interview.

In the video-recorded forensic interview, which was conducted on October 26, 2022, A.D. described in detail his observations of multiple sexual assaults of Y.A. ECF 21-5 ("A.D. Forensic Interview"). A.D. identified the same three students he had previously described to Detective Graham, and he also stated that he had previously complained to school officials that the suspect whose first name began with "L" was bullying him and had called him the name of a school shooter. ECF 21-2 at 4-5. A.D. explained that the three students would wait for the teachers in the locker room to oversee the eighth-grade classes before they assaulted Y.A. in locked bathroom stalls. *Id.* A.D. described hearing on multiple occasions noises such as clapping, laughing, choking, and moaning coming from the stalls, and he believed they were raping Y.A. *Id.* at 5. At one point, while attempting to see what was going on in the stall, A.D. was told to turn around and go back

to the locker room or he would get hurt. *Id.* A.D. also described witnessing the three suspects pin Y.A. against the wall and take turns grabbing his genitals, while only wearing underwear. *Id.* A.D. described Y.A. as "frozen up" during this assault. *Id.* He observed two of the suspects turning their cellphones to "camera mode" prior to one of these assaults. *Id.*

After this forensic interview, Detective Graham obtained photographs of all the male students who were supposed to enter the locker room during the relevant timeframe. ECF 21-2 at 5; ECF 21-4 at 2. With these photographs, A.D. positively identified Plaintiffs M.G. and E.R. He stated that the boy whose first name begins with an "L" was not pictured. *Id.* Plaintiff L.M. was later identified after Detective Graham inquired with school officials as to A.D.'s previous bullying complaint. *Id.*

A child advocate then conducted a video-recorded forensic interview of Y.A. *See* Compl. ¶ 28; ECF 21-3 ("Y.A. Forensic Interview"). Y.A. stated that boys "'S' 'E' 'X' at me" in the locker room, and that although he did not know the boys' names, A.D. could identify them because he saw what occurred. ECF 21-2 at 6. Y.A. also stated that he was "shaken up" by what the boys did. *Id.* Y.A. could not explain what "sex" was. *Id.* at 7. He indicated that clothes were on during the incidents, and he circled the entire body in response to an instruction to circle the body parts the with which the suspects had sex.

On November 4, 2022, Detective Graham obtained search warrants for M.G.'s and E.R.'s cellphones and video surveillance cameras facing the locker room. ECF 21-2 at 7. After turning over his phone, M.G. agreed to be interviewed, and he denied the allegations. *Id.*

At this point, prosecutors advised Detective Graham "to proceed with charges through the Loudoun County Juvenile Intake." ECF 21-2 at 7. Detective Graham sent the investigation to Loudoun County Juvenile Intake for review on November 8, 2022. *Id.* at 8; ECF 21-4 at 3. The

3

next day, Detective Graham spoke with L.M.'s father to advise him that his son was a suspect and to ask whether he would allow an interview of L.M. ECF 21-2 at 8. L.M.'s father declined the interview until he had a chance to speak with a lawyer. *Id.* Detective Graham soon thereafter learned that Loudoun County Juvenile Intake determined there was probable cause and had filed Juvenile Petitions against all three Plaintiffs for aggravated sexual battery of Y.A. *Id.* Detective Graham contacted L.M.'s father to report this development, and during this call, L.M.'s father told Detective Graham that L.M. did not know Y.A., was not in his class, and was not involved. *Id.*; *see* ECF 21-6.

Detective Graham took the Plaintiffs into custody and transported them to the Juvenile Detention Center pursuant to Detention Orders. *Id.* Plaintiffs allege that upon their admission they had to strip naked, raise their arms, squat and cough, and manipulate their genitals in view of John Doe #5. Compl. ¶ 40. E.R. claims he was strip searched in the presence of a female officer (who is not a defendant), and that John Doe #4 ran his hands over E.R's legs and groin. Compl. ¶ 41. He was detained for four days until his detention hearing. Compl. ¶ 44. L.M. and M.G. were detained overnight and had a detention hearing the next day. Compl. ¶ 43. Plaintiffs allege that upon returning to the Detention Center from court, they were required to "strip naked and repeat the same search as the previous evening." Compl. ¶ 46. L.M. and E.R. allege they were strip searched yet another time by John Doe #6 before they were released to their parents. Compl. ¶¶ 47-48.

Detective Graham continued his investigation. On November 14, 2022, he obtained a search warrant for the data on E.R's and M.G.'s cell phones, but it was not until December 5, 2022, that he was able to determine that nothing on the phone was located discussing, photographing, or recording the alleged assaults. ECF 21-4 at 4. On December 14, 2022, Detective Graham learned

4

that A.D. had provided a story to the prosecutor that was inconsistent with what he had previously told Graham during his forensic interview.

Based on this new information, Detective Graham believed that A.D. would not be an effective witness at trial and encouraged the prosecutor to drop the charges. ECF 21-4 at 5. The charges were nolle prossed on December 19, 2022. *Id.* at 6.

Plaintiffs bring four claims: Count I is a malicious prosecution claim under § 1983 against Detective Graham; Count II is a claim for unreasonable search under § 1983 against the John Does and Smith; Count III is a state law malicious prosecution against Detective Graham; and Count IV alleges state law assault and battery against the John Does and "Loudoun County Juvenile Detention Center."

Defendants Graham and Smith moved to dismiss the complaint, and after full briefing and oral argument, their motions are ripe for resolution.

## II. ANALYSIS

### A. Detective Graham's Motion to Dismiss

Plaintiffs bring a malicious prosecution claim under state law and Section 1983 against Detective Graham. To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). Under this standard, Plaintiffs have failed to state either claim against Detective Graham.[2]

---

[2] Plaintiffs brought the Section 1983 claim against Detective Graham in both his individual and official capacity. An official capacity claim under Section 1983 is effectively a suit against the municipality itself, and officials sued in their official capacity are immune from monetary damages under the Eleventh Amendment because they are not considered "persons" under Section 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). Plaintiffs argue sovereign immunity does not apply because "whether a [municipality] is entitled to sovereign immunity depends on the type of function it exercises when liability arises," and in their view, Detective Graham's "reckless disregard for the truth" placed his actions outside the protection of sovereign immunity. ECF 26 at 11 (citing *Baka v. City of Norfolk*, 2022 WL 757218 (E.D. Va. 2022)). There can be no question, however, that Detective Graham was "act[ing]

5

As a threshold matter, the parties dispute whether the Court can consider at this stage, without converting the motion to dismiss into a motion for summary judgment, the additional evidence Detective Graham attached to his motion.[3] Detective Graham submitted: (1) an email chain between Y.A.'s family and the school reporting the allegations; (2) Detective Graham's affidavit in support of a search warrant; (3) a video recording of Y.A.'s forensic interview; (4) Detective Graham's case supplement; (5) a video recording of A.D.'s forensic interview; and (6) an audio recording of Detective Graham's phone call with L.M.'s father. *See* ECF 21-1 – 21-6. Plaintiffs argue that these exhibits are "cherry-picked by the defense without Plaintiffs' opportunity to develop facts more fully through discovery" (ECF 26 at 12), and they urge the Court to exclude consideration of this evidence.

The Court may consider the extrinsic documents and recordings Detective Graham provided at the motion to dismiss stage because they are either integral to the complaint or public records. "[A] court may consider official public records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint so long as the authenticity of these documents is not disputed." *Withhohn v. Federal Ins. Co.*, 164 F. App'x 395, 396 (4th Cir. 2006) (citing *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999)). The complaint expressly refers to statements made in the family's report to the school of the bullying Y.A. suffered (Compl. ¶ 25); A.D.'s forensic interview (*id.* ¶ 29), Y.A.'s forensic interview (*id.* ¶ 28), and Detective Graham's phone call with L.M.'s father (*id.* ¶ 37). Because the complaint makes allegations concerning these conversations, and because they are central to the claims at issue, the Court is

---

in [a] governmental capacity" during this investigation, and therefore Plaintiffs' official capacity must be dismissed on sovereign immunity grounds. *Niese v. City of Alexandria*, 564 S.E.2d 127, 132 (2002).

[3] Although Plaintiffs state in their opposition that they "move for discovery pursuant to Rule 56(d) to allow fair adjudication of material disputes of fact as to Graham's actions" (ECF 26 at 2), they did not file an "affidavit or declaration that" demonstrates why they "cannot present facts essential to justify its opposition" (Fed. R. Civ. P. 56(d)). In any event, as explained below, the Court need not resolve this deficiency because it will analyze the motion under the Rule 12(b)(6) standard.

permitted to consider recordings of them at the motion to dismiss stage. *See, e.g.*, *Thweatt v. Rhodes*, 2021 WL 399725, at *3 (E.D. Va. Feb. 4, 2021) (considering a video recording of an altercation referenced in the complaint in a malicious prosecution case). Detective Graham's affidavit in support of a search warrant and his case supplement, moreover, are both "official public records pertinent to the plaintiffs' claims." *Gasner v. County of Dinwiddie*, 162 F.R.D. 280, 282 (E.D. Va. 1995); *see also Sec'y of State for Defense v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007) ("In reviewing the dismissal of a complaint under Rule 12(b)(6), we may properly take judicial notice of matters of public record" and consider documents extrinsic to the complaint "so long as they are integral to the complaint and authentic"). Plaintiffs have not challenged the authenticity of any of these materials. *See* ECF 26 at 12-17. Accordingly, because all this evidence is either expressly referenced in the complaint, or central to the complaint and a matter of public record, the Court will consider them at the Rule 12(b)(6) stage.

The elements for a malicious prosecution claim under Section 1983 and Virginia law substantially overlap. Under the Section 1983 framework, malicious prosecution actions are analyzed as actions claiming unreasonable seizure in violation of the Fourth Amendment. *See Lambert v. Williams*, 223 F.3d 257, 262 (4th Cir. 2000). A plaintiff "must allege that the defendant[s] (1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in plaintiff's favor." *Evans v. Chalmers*, 703 F.3d 636, 647 (4th Cir. 2012). To state a common law action for malicious prosecution under Virginia law, a plaintiff must establish, "that the prosecution was (1) malicious; (2) instigated by or with the cooperation of the defendant; (3) without probable cause; and (4) terminated in a manner not unfavorable to the plaintiff." *O'Connor v. Tice*, 704 S.E.2d 572, 575 (Va. 2011). The

malicious prosecution claim under Virginia law therefore has one additional element, a showing of malice.

Both claims fail as a matter of law for two reasons. First, there was probable cause for Plaintiffs' arrest. Second, even if there was not, Plaintiffs have not alleged that Detective Graham "caused" (*Evans*, 703 F.3d at 647) or "instigated" (*O'Connor*, 704 S.E.2d at 575) Plaintiffs' prosecution.

### 1. Probable Cause

At the time of Plaintiffs' arrest, there was probable cause that they had committed aggravated sexual battery in violation of Virginia Code § 18.2-67.3. That statute prohibits sexual abuse of a person under the age of thirteen through the use of the victim's mental incapacity or physical helplessness. There does not appear to be any dispute that Y.A. was under the age of thirteen and that he had diminished mental capacity due to his autism. Compl. ¶ 1; *see also* Y.A. Forensic Interview. The only question is whether there was probable cause that Plaintiffs sexually abused Y.A. Detective Graham had on two occasions received detailed accusations by A.D., who described three students committing multiple acts of sexual abuse against Y.A. in the locker room, including seeing Plaintiffs pin Y.A. to the wall and grab his genitals. Y.A. did not deny these accusations, but rather stated that "boys "'S' 'E' 'X' at me" in the locker room, and that he was "shaken up" by what the boys did. *See* Y.A. Forensic Interview; ECF 21-2 at 6-7. Although Y.A. could not identify these students, he stated that A.D. could identify them because A.D. saw what happened. ECF 21-2 at 6. A.D. positively identified Plaintiffs M.G. and E.R. amongst photographs of the male students who were supposed to be in the locker room during the relevant time, and he stated that the other student, whose name began with "L," was not pictured but that he had

previously reported a bullying incident concerning this student. ECF 21-2 at 5. Detective Graham then identified Plaintiff L.M. after inquiring with school officials about A.D.'s previous report. *Id.*

Under the totality of these circumstances, this evidence was sufficient to establish the requisite "fair probability" that Plaintiffs sexually abused Y.A. *Kaley v. United States*, 571 U.S. 320, 338 (2014). "While probable cause requires more than 'bare suspicion,'" it does not require a preponderance of the evidence. *United States v. Gray*, 137 F.3d 765, 769 (4th Cir. 1998); *see United States v. Humphries*, 372 F.3d 653, 660 (4th Cir. 2004). And probable cause determinations are "preliminary and tentative;" the arresting officer's belief need not be correct. *Acosta v. Ames Dep't Stores, Inc.*, 386 F.3d 5, 11 (1st Cir. 2004). Even when considering this evidence in the light most favorable to Plaintiffs, Detective Graham had a detailed accusation of sexual abuse by a witness, a disabled victim that did not deny the witness's accusations, and positive identifications from the witness of the three suspects. This is enough to establish probable cause. *See Torchinsky v. Siwinski*, 942 F.2d 257, 262 (4th Cir. 1991); *Ahlers v. Schebil*, 188 F.3d 365, 370-71 (6th Cir. 1999); *Barham v. Town of Greybull*, 483 F. App'x 506, 507 (10th Cir. 2012).

Plaintiffs' response boils down to arguing that Detective Graham failed to consider, and ultimately provide to the Juvenile Intake Center, "exculpatory factual context for the allegations." ECF 26 at 6. According to Plaintiffs, that context includes, (1) "A.D.'s admittedly biased feelings toward L.M."; (2) "L.M.'s verified alibi" because he was not in the gym class (and therefore not in the photos Detective Graham was provided); and (3) Y.A.'s failure to "corroborate the assault" or identify any of the Plaintiffs. *Id.* at 5. This context, however, is insufficient to undermine the probable cause determination. Taking the last point first, and most importantly, Y.A.'s interview cannot reasonably be characterized as failing to "corroborate the assault." *Id.* Again, Y.A. plainly stated that "boys "'S' 'E' 'X' at me" in the locker room, and that he was "shaken up" by what they

9

did. *See* Y.A. Forensic Interview; ECF 21-2 at 6-7. Even if Y.A. misunderstood the nature of a sexual assault, his statements cannot reasonably be understood to undermine A.D.'s accusations that abuse occurred. Second, even though Detective Graham knew that A.D. had previously reported that L.M. was bullying him, that fact is an insufficient basis to completely undermine the overall credibility of A.D.'s account, as it would not explain why A.D. fabricated a story that two other individuals sexually abused Y.A. Third, the complaint does not allege that L.M. had a "verified alibi" but rather that L.M. "was not in the 8th-period P.E. class when the purported assault was alleged to have occurred." Compl. ¶ 31. Although Detective Graham knew this at the time, this fact too is not enough to completely undermine A.D.'s eyewitness account. Officers are "not required to sift through conflicting evidence or resolve issues of credibility, so long as the totality of the circumstances present a sufficient basis for believing that an offense has been committed." *Dahl v. Holley*, 312 F.3d 1228, 1234 (11th Cir. 2002); *see Willis v. Blevins*, 2014 WL 266323, at *4 (E.D. Va. Jan. 23, 2014).

Because the Court finds there was probable cause for all three Plaintiffs' arrests, their state law malicious prosecution claim must be dismissed. For the same reason, Plaintiffs cannot establish a constitutional violation under Section 1983 for an unreasonable seizure, and that claim must be dismissed. The Court further notes that Detective Graham argued he is entitled to qualified immunity. Even if probable cause were lacking here, at the very least, Plaintiffs have failed to point to any binding authority that clearly establishes Detective Graham unreasonably seized Plaintiffs in these circumstances. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001). Accordingly, Detective Graham is entitled to qualified immunity on the Section 1983 claim.

## 2. Causation

The malicious prosecution claims must also be dismissed because Detective Graham did not cause the seizure. For the Section 1983 claim, Plaintiffs must show "both but-for and proximate causation." *Evans v. Chalmers*, 703 F.3d 636, 647 (4th Cir. 2012). And for the state law claim, Plaintiffs must show that the prosecution was "instigated by or with the cooperation of" Detective Graham. *O'Connor*, 704 S.E.2d at 575. But because under Virginia law it was an intake officer at Juvenile Intake—not Detective Graham—who assessed the evidence, made the probable cause determination, and filed the Juvenile Petitions that instigated Plaintiffs' prosecutions, Plaintiffs have not alleged the requisite causation for these claims.

Virginia Code § 16.1-260 specifies the procedures for initiating juvenile charges. That statute authorizes an "intake officer" to "file a petition" when he "receives a complaint alleging facts which may be sufficient to invoke the jurisdiction of the [juvenile court]," that is, if there is "probable cause for the issuance of the petition." *Id.* § 16.1-260(B); *see also id.* § 16.1-260(C) (authorizing the intake office to file a petition "[i]f any such complainant does not file a petition" and authorizing the intake officer to "refuse to authorize the filing of a petition" "if the intake officer believes that probable cause does not exist"). Put simply, under the statute, it is a Juvenile Intake officer that decides whether probable cause exists to bring charges. And consistent with this statutory scheme, Detective Graham's reports indicate that the prosecutor instructed him to present the information he had collected to Juvenile Intake, which independently decided that there was probable cause that Plaintiffs committed aggravated sexual battery. *See* ECF 21-2 at 7-8; ECF 21-4 at 3.

Because the Juvenile Intake officer independently made the probable cause determination, Detective Graham was not the proximate cause of Plaintiffs' seizure. Actions taken by an

11

independent decisionmaker, like the Juvenile Intake officer here, are an "intervening superseding cause[] that break[s] the causal chain." *Evans*, 703 F.3d at 647. Plaintiffs do not allege that Graham lied to the Juvenile Intake officer or unduly pressured the Juvenile Intake officer's decision. Instead, Plaintiffs allege that Detective Graham "provided an incomplete" record and failed to obtain "exonerating information" that was "readily" available. Compl. ¶ 53. These allegations only amount to a grievance that Detective Graham should have conducted a more thorough investigation, which is not enough to undermine the independent, intervening decision by Juvenile Intake that, based on the information available at the time, there was probable cause for Plaintiffs' arrests. In other words, Plaintiffs have not alleged in their complaint actions by Detective Graham that "tainted" "the deliberations" of Juvenile Intake. *Evans*, 703 F.3d at 648 (quoting *Hand v. Gary*, 838 F.2d 1420, 1428 (5th Cir. 1988)).

In sum, the malicious prosecution claims against Detective Graham must be dismissed. Detective Graham is entitled to qualified immunity on the Section 1983 malicious prosecution claim because there was probable cause for Plaintiffs' arrests, and even if there were not, Detective Graham was not the proximate cause of their arrests. And for those same two reasons, the state law malicious prosecution claim must be dismissed as well.[4]

### B.    Smith's Motion to Dismiss

---

[4] The Court is mindful of the seriousness of the allegations in this case—both the initial allegations that Plaintiffs sexually abused Y.A. and Plaintiffs' allegations in their complaint that those accusations were fabricated—and the young ages of the children involved. It is worth emphasizing the Court's limitations to effectuate justice in these circumstances. Although the Court holds that Plaintiffs' arrests and subsequent detention were constitutionally permissible, that does not necessarily mean that Plaintiffs' arrests and detention were publicly desirable. Arrests are costly "not only to the individual arrested but also to their families and communities," yet constitutional law, which permits an arrest "whenever an officer has probable cause," "has no mechanism for ensuring that the state has any interest in making an arrest—as opposed to starting the criminal process in another way." Although the Fourth Amendment may be the only tool the Court can employ, it is "a poor proxy for good policy." Rachel A. Harmon, *Why Arrest?*, 115 Mich. L. Rev. 307 (2016). This may well have been a case in which, with hindsight, the better course of action would have been to gather additional information before any action was taken with regard to detention.

Plaintiffs bring a claim under Section 1983 for unreasonable search against Superintendent Smith.[5] Although it is unclear whether Plaintiffs intended to sue Smith in only her official capacity or also in her individual capacity, either way, as Plaintiffs' counsel conceded at oral argument, the claim against Smith must be dismissed. *See* Compl. ¶ 19.

Any claim against Superintendent Smith in her individual capacity must be dismissed because she was not personally involved in any of the searches, and Plaintiffs have not alleged a failure to supervise or train. There are no allegations that Smith participated in, was present for, or even was aware of any of the alleged searches. Instead, Plaintiffs argue that their claim against Smith is challenging "her [failure] to train and supervise staff and thus allow[] violations of established policies to go unchecked." ECF 27 at 6. But as Plaintiffs' counsel conceded at oral argument, there are no such allegations in the complaint. To plead a failure to supervise claim, Plaintiffs must allege: (1) that the supervisor had actual or constructive knowledge that her subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to Plaintiffs; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices;" and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994). Plaintiffs have simply not made these allegations in their complaint.

Moreover, as Plaintiffs' counsel conceded at oral argument, the claim against Superintendent Smith in her official capacity, which amounts to a *Monell* claim, must also be

---

[5] The complaint is somewhat unclear as to whether Plaintiffs intended to also bring Count IV (state law assault and battery) against Smith; that count does not name her specifically but instead names the "Loudoun County Juvenile Detention Center," which is not a defendant in this case. Plaintiffs clarified at oral argument that they "are not alleging a state law assault and battery" claim against Smith, and indeed, they waived any opposition to dismissal because they did not respond to Smith's argument in her motion that Count IV should be dismissed against her.

dismissed because Plaintiffs have not alleged "the existence of an official policy or custom that is fairly attributable to the municipality and that proximately caused the deprivation of their rights." *Jordan by Jordan v. Jackson*, 15 F.3d 333, 338 (4th Cir. 1994). Plaintiffs do not identify the "policy" which allegedly violated their constitutional rights, despite referring to the Detention Center's specific operating procedures and policies. *See* Compl. ¶ 64. Plaintiffs' conclusory allegation that "[t]he unreasonable searches complained of were pursuant to an unconstitutional policy promulgated by Smith on behalf of Loudoun County" is insufficient. Compl. ¶ 71; *see Walker v. Prince George's County*, 575 F.3d 426, 431 (4th Cir. 2009).

### III.   CONCLUSION

Because Plaintiffs failed to state a claim against Detective Graham and Superintendent Smith, they will be dismissed. Plaintiffs may pursue limited discovery to uncover the identities of the John Doe defendants within thirty (30) days of the date of this Order, and may thereafter file an amended complaint, if they so choose.

Accordingly, it is hereby

**ORDERED** that Plaintiffs' Motion to Proceed Pseudonymously (ECF 2) is **GRANTED**; and it is further

**ORDERED** that Defendant Graham's Motion to Dismiss (ECF 16) is **GRANTED**; and it is further

**ORDERED** that Defendant Smith's Motion to Dismiss (ECF 23) is **GRANTED**; and it is further

**ORDERED** that the claims against Defendant Graham are **DISMISSED WITH PREJUDICE**; and it is further

14

**ORDERED** that the claims against Defendant Smith are **DISMISSED WITHOUT PREJUDICE** and that Plaintiffs may pursue narrowly tailored discovery to uncover the identities of the John Doe defendants and may file an amended complaint within thirty (30) days of the date of this Order.

**SO ORDERED.**

/s/
Michael S. Nachmanoff
United States District Judge

April 23, 2024
Alexandria, Virginia

15